IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| H5 CAPITAL - SEATTLE REAL ESTATE, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ONNI CAPITAL, LLC, a Nevada limited liability company,<br><br>Defendant. | Case No.<br><br>COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY JUDGMENT |

## I. INTRODUCTION

1. Plaintiff H5 Capital - Seattle Real Estate, LLC (H5), a Delaware limited liability company, brings this action against Defendant Onni Capital, LLC (Onni Capital), a Nevada limited liability company, for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment. H5 is an entity through which the Simms family owns and operates the property subject of this lawsuit. Onni Capital is a single member limited liability company owned by the Onni Group, a Vancouver, British Columbia business that describes itself as one of North America's leading real estate developers.

2. H5 owns the real property located at 121 Boren Avenue North, Seattle, Washington, 98109 (the Property). In order to obtain the exclusive option to buy the Property, on August 19,

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY JUDGMENT - 1

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

1   2019, Onni Capital entered into an Option Agreement to Purchase Real Property (Option
2   Agreement), which required that it initially deposit $500,000 into escrow as consideration for the
3   exclusive option to purchase the Property (the Initial Option Payment). Over the next several
4   months, Onni Capital repeatedly requested that H5 agree to extend the exclusive option period.
5   After six extensions, Onni Capital exercised its option and deposited an additional option payment
6   of $500,000 (the Additional Option Payment), which brought the total amount of option payments
7   paid into escrow to $1,000,000, as required by the Option Agreement. A copy of Onni Capital's
8   Option Exercise Notice is attached as Exhibit A.

9         3. On December 19, 2019, H5, as seller, and Onni Capital, as buyer, entered into the
10  Agreement of Purchase and Sale and Joint Escrow Instructions (PSA). In accordance with the
11  PSA, Onni Capital deposited $1,500,000 in earnest money (the Earnest Money Deposit) into
12  escrow. The PSA expressly states that the Initial Option Payment, the Additional Option Payment,
13  and the Earnest Money Deposit are non-refundable to Onni Capital except in limited circumstances
14  defined under the PSA.

15        4. On April 27, 2020, Onni Capital's counsel sent a letter to H5 and First American
16  Title Insurance Company (the Escrow Holder) stating that Onni Capital had elected to terminate
17  the PSA and directing the Escrow Holder to disburse the $2,500,000 to Onni Capital (the Notice).
18  As of April 27, 2020, H5 had performed all of its obligations under the PSA and Onni Capital had
19  never claimed otherwise. Under the clear, binding provisions of the PSA and Option Agreement,
20  the $2,500,000 in escrow is non-refundable in light of Onni Capital's abandoning the transaction.

21        5. Notwithstanding the contract provisions to which it agreed, Onni Capital's Notice
22  also instructed the Escrow Holder to release the entire $2,500,000 in escrow to Onni Capital and to
23  ignore any instructions to the contrary.

24        6. On April 30, 2020, H5's counsel sent notice to Onni Capital's lawyers that the PSA
25  required Onni Capital to authorize the release of the full amount in escrow to H5. Onni Capital did

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF
IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING,
AND DECLARATORY JUDGMENT - 2

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700  FAX (206) 623-8717

not comply with its obligations.  On May 7, 2020, H5 notified Onni Capital that its failure to consummate the transaction rendered it in default of its obligations under the PSA and provided it with 15 days to cure as provided in the PSA (the H5 Notice).  On May 22, 2020, Onni Capital responded by baselessly claiming (for the first time) that its performance under the PSA was excused by an alleged breach of the PSA by H5.

## II.     PARTIES

7. H5 is a Delaware limited liability company.  H5's sole member is 1000 Denny Way, LLC (Denny Way), a Delaware limited liability company.  The members of Denny Way, and the domicile of those members, are as follows:

 a. Joshua Simms Trust, whose sole trustee is a California citizen.

 b. Alaska Wildlife Trust, whose trustees are Alaska citizens.

 c. H5 Capital, L.P. (H5 LP):  H5 LP is a California limited partnership whose partners are: (i) Tigertail Capital, LLC, whose sole member is a California citizen; (ii) VMS Opportunity Fund, L.P., whose partners are Alaska and New York citizens; (iii) a trust whose trustees are Alaska and New York citizens; and (iv) an individual who is a California citizen.

 d. Westgate Real Estate Holdings Alaska LLC (Westgate):  The sole member of Westgate is Westgate Trust, whose trustees are California citizens.

 e. Denali Alaska Trust, whose trustees are Alaska citizens.

 f. Simms Holding Company, LLLP (Simms Holding):  Simms Holding is a Delaware limited liability limited partnership whose sole partner is Simms Business Company, LLC (Simms Business).  The sole member of Simms Business is a trust, the trustees of which are Alaska, California, and New York citizens.

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY JUDGMENT - 3

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

8.      Onni Capital is a limited liability company organized under the laws of Nevada with its principal place of business in Vancouver, British Columbia.  The sole member of Onni Capital is 0878066 B.C. LTD, a Canadian company located in Vancouver, British Columbia.

### III.    JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different states and because the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs.

10.     This Court has personal jurisdiction over Onni Capital because the PSA and Option Agreement concern a transaction to be performed in Seattle, King County, Washington and provide that both parties irrevocably submit to the jurisdiction of any state or federal court sitting in the State of Washington.

11.     Venue is proper in the U.S. District Court for the Western District of Washington pursuant to 28 U.S.C. § 1391(b)(2) and (c)(3).

### IV.    FACTUAL ALLEGATIONS

**A.      H5 and Onni Capital Enter Into an Exclusive Option Agreement and Onni Capital Makes the Initial Option Payment.**

12.     The Property consists of approximately 15,000 square feet of real property in Seattle, Washington, commonly known as 121 Boren Avenue North, Seattle, Washington 98109. The Property is adjacent to the former Seattle Times building in the heart of Seattle's technology company mecca, the highly desirable South Lake Union neighborhood.  The Property is well suited to the development of a large high-rise project and through H5's extensive efforts is entitled for a 40 story multi-family development.

13.     Onni Capital is owned and controlled by a multi-billion dollar real estate development company based in Vancouver, British Columbia that owns and develops residential, office, retail, and industrial projects in a number of major cities in Canada and the United States.

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY JUDGMENT - 4

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

14. As alleged above, H5, as the potential seller, and Onni Capital, as the potential buyer, entered into the Option Agreement on August 19, 2019. The Option Agreement provided Onni Capital with the exclusive right and option to purchase the Property for a specified period of time.

15. The exclusive option required H5 to keep the Property off the market for a substantial period of time which coincided with an extremely robust sales period in Seattle. In exchange, Onni Capital was required to make an Initial Option Payment in the amount of $500,000, which reflected in part the value of being able to tie up highly desirable property for potential acquisition.

16. H5 and Onni Capital agreed to six extensions of Onni Capital's exclusive option period. These repeated extensions of the exclusive option period provided Onni Capital with ample opportunity to conduct substantial due diligence regarding the Property during the option period, including, but not limited to, the right to review the most recent survey of the Property, the environmental and soils reports, the title insurance policy then in effect, tax bills and assessment notices, and entitlement information, and the right to physically inspect and carry out tests on the Property.

**B.    Onni Capital Exercises Its Option and Deposits the Additional Option Payment.**

17. On December 19, 2019, approximately four months after Onni Capital's exclusive option period began, Onni Capital exercised its option to purchase the Property. In connection with its exercise of the exclusive option, Onni Capital provided H5 with written notice of its exercise of the exclusive option and made the $500,000 Additional Option Payment into escrow, which brought the total amount of option payments to $1,000,000 as required by the Option Agreement.[1]

---

[1] Pursuant to Sec. 2.3 of the PSA, all interest that accrues on the Initial and Additional Option Payments shall become part of the Option Payment.

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF
IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING,
AND DECLARATORY JUDGMENT - 5

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

### C. H5 and Onni Capital Enter Into a Purchase and Sale Agreement and Onni Capital Makes an Earnest Money Deposit.

18. Concurrently with Onni Capital's exercise of its exclusive option to purchase the Property, H5, as seller, and Onni Capital, as buyer, entered into the PSA. Onni Capital and H5 agreed upon a purchase price for the Property of $25,648,276.

19. Once the PSA was executed, Onni Capital delivered the Earnest Money Deposit of $1,500,000 to the Escrow Holder, as required by Section 2.4 of the PSA. Between the Initial Option Payment, the Additional Option Payment, and the Earnest Money Deposit, the total amount deposited with the Escrow Holder amounted to $2,500,000.[2]

### D. Onni Capital Purports to Terminate the PSA.

20. On April 27, 2020, Onni Capital delivered its Notice to both H5 and the Escrow Holder. The Notice instructed the Escrow Holder to disburse the $2,500,000 to Onni Capital and further demanded that the Escrow Holder ignore any instructions from H5 to release the $2,500,000 to H5. A copy of the Notice is attached hereto as Exhibit B.

### E. Under the PSA, Onni Capital Has No Right to a Refund of the $2.5 Million, Which Must Be Disbursed to H5 in light of Onni Capital's Uncured Default.

21. Under the parties' agreements, Onni Capital's payments are non-refundable in light of its default of its obligations under the PSA.

   *i. The One Million Dollars in Option Payments Are Non-Refundable Consideration.*

22. Section 2.3 of the PSA specifies the limited circumstances under which the Initial Option Payment and the Additional Option Payment would be refundable to Onni Capital (the PSA refers to these payments collectively as the Option Payment). Specifically, Section 2.3 states:

> The Option Payment is non-refundable to Purchaser except (a) if Closing does not occur because of (i) the failure of any condition precedent to the obligations of Purchaser under Section 4.7 [of the PSA], (ii) a Seller default as described in Section 6.2 [of the PSA], or (iii) any termination by Purchaser allowed under

---

[2] Pursuant to Sec. 2.4 of the PSA, all interest accruing on the $1.5 million becomes part of the Earnest Money Deposit.

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY JUDGMENT - 6

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

Section 7.1 [of the PSA], or (b) as otherwise may be expressly provided in this Agreement.

23. At the time Onni Capital delivered its Notice to H5 and the Escrow Holder, there (i) had not been a failure of any of the conditions precedent to Onni Capital's obligations under Section 4.7 of the PSA; (ii) had been no failure to consummate the transaction contemplated by the PSA due to a default by H5, which is the only default specified in Section 6.2 of the PSA; (iii) had been no condemnation of any portion of the Property, which is the only reason Onni Capital would be permitted to terminate the PSA under Section 7.1 of the PSA; and (iv) was no other express provision in the PSA pursuant to which Onni Capital had the right to terminate the PSA.

24. Section 2.3 of the PSA also expressly acknowledges that the Initial Option Payment and the Additional Option Payment are not liquidated damages or a remedy to H5 for Onni Capital's breach of the PSA. By the parties' express agreement, the Initial Option Payment and the Additional Option Payment together constitute the amount that H5 and Onni Capital had agreed was fair and reasonable consideration to H5 in light of the exclusive option H5 provided to Onni Capital. Specifically, Section 2.3 states:

> **DUE TO THE LONG PERIOD OF TIME BETWEEN THE EFFECTIVE DATE OF THE OPTION AGREEMENT AND THE CLOSING DATE . . . PURCHASER AND SELLER ACKNOWLEDGE THAT THE OPTION PAYMENT IS BEING PAID TO SELLER AS CONSIDERATON FOR (1) PROVIDING TO PURCHASER THE EXCLUSIVE OPPORTUNITY TO PURCHASE THE SUBJECT PROPERTY DURING THE TIME THE OPTION AGREEMENT AND THIS AGREEMENT IS IN EFFECT; (2) FREEZING THE PURCHASE PRICE AT A TIME WHEN REAL ESTATE LAND VALUES IN SEATTLE, WASHINGTON WERE ESCALATIONG; (3) THE LOST OPPORTUNITIES TO SELL THE PROPERTY DURING THE TIME THIS AGREEMENT IS IN EFFECT; (4) COMPENSATING SELLER FOR HOLDING THE PROPERTY OFF THE MARKET AND LOSING THE TIME VALUE OF ITS INVESTMENT WERE THE PROPERTY SOLD AND THE PROCEEDS INVESTED; AND (5) THE CURRENT DESIRABILITY OF THE PROPERTY AND THE POTENTIAL FOR MARKET CONDITIONS TO CHANGE DURING THE TIME THIS**

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY JUDGMENT - 7

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

**CONTRACT IS IN EFFECT. PURCHASER IS A SOPHISTICATED REAL ESTATE INVESTOR AND ACKNOWLEDGES THAT (A) THE OPTION PAYMENT IS NON-REFUNDABLE EXCEPT AS EXPRESSLY SET FORTH IN THIS CONTRACT; (B) IF PURCHASER WRONGFULLY FAILS, IN BREACH OF THIS AGREEMENT, TO CONSUMMATE THE PURCHASE OF THE PROPERTY, IF AND WHEN REQUIRED TO DO SO UNDER THE TERMS OF THIS AGREEMENT AND FAILS TO CURE SUCH DEFAULT WITHIN ANY APPLICABLE NOTICE AND OPPORTUNITY TO CURE PERIOD, THE OPTION PAYMENT SHALL BE RETAINED BY SELLER; AND (C) THE OPTION PAYMENT IS NOT LIQUIDATED DAMAGES OR A REMEDY TO SELLER FOR PURCHASER'S BREACH OF THIS AGREEMENT, BUT RATHER IS CONSIDERATION PAID BY PURCHASER FOR THE RIGHTS SET FORTH ABOVE.**

(Capitalization and emphasis in original).

### ii. *The $1.5 Million Earnest Money Deposit Is Not Refundable to Onni Capital.*

25. Section 2.4 of the PSA specifies the limited circumstances under which the Earnest Money Deposit would be refundable to Onni Capital. These circumstances are identical to the limited circumstances under which the Initial Option Payment and the Additional Option Payment would be refundable to Onni Capital:

> The [Earnest Money Deposit] is non-refundable to Purchaser except (a) if Closing does not occur because of (i) the failure of any condition precedent to the obligations of Purchaser under Section 4.7 [of the PSA], (ii) a Seller default as described in Section 6.2 [of the PSA], or (iii) any termination by Purchaser allowed under Section 7.1 [of the PSA], or (b) as otherwise may be expressly provided in this Agreement.

As set forth above, none of these limited circumstances existed at the time Onni Capital delivered the Notice.

26. Section 6.1 of the PSA states that if the sale of the Property is not consummated due to any default by Onni Capital, and such default is not cured within 15 days of notice of such default from H5 to Onni Capital, then:

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY JUDGMENT - 8

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

> [H5] SHALL RETAIN THE [EARNEST MONEY] DEPOSIT AS LIQUIDATED DAMAGES . . . . THE PARTIES HAVE AGREED THAT SELLER'S ACTUAL DAMAGES IN THE EVENT OF A FAILURE TO CONSUMMATE THIS SALE DUE SOLELY TO PURCHASER'S DEFAULT HEREUNDER WOULD BE EXTREMELY DIFFICULT OR IMPRACTICABLE TO DETERMINE. AFTER NEGOTIATION THE PARTIES HAVE AGREED THAT, CONSIDERING ALL THE CIRCUMSTANCES EXISTING ON THE DATE OF THIS AGREEMENT, THE AMOUNT OF THE DEPOSIT IS A REASONABLE ESTIMATE OF THE DAMAGES THAT SELLER WOULD INCUR UNDER THIS AGREEMENT IN SUCH EVENT.

(Capitalization in original).

27. After receiving Onni Capital's Notice, H5 sent Onni Capital the H5 Notice, as required by Section 6.1 of the PSA. The H5 Notice gave Onni Capital 15 days to either to cure its default and consummate the transaction, or to authorize the Escrow Holder to release the funds in escrow to H5. A copy of the H5 Notice is attached hereto as Exhibit C.

28. Onni Capital has failed to cure its default: it has not consummated the transaction nor issued any instructions to release the Option Payment and Earnest Money Deposit as required by the PSA.

## V.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### [Breach of Contract]

29. H5 incorporates by reference the allegations contained in paragraphs 1 through 28, above, as if fully set forth herein.

30. H5 performed all of the obligations and satisfied all of the conditions required of it by the Option Agreement and the PSA.

31. The PSA states that the $1,000,000 Option Payment and the $1,500,000 Earnest Money Deposit are non-refundable to Onni Capital, and must be paid to H5, except under narrow,

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY JUDGMENT - 9

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

delineated circumstances, none of which had occurred at the time Onni Capital sent the Notice purporting to terminate the PSA.

32. Despite the fact that Onni Capital has no right to a refund of any payments made under the PSA or Option Agreement, Onni Capital has refused to allow the Escrow Holder to release the funds to H5.

33. Onni Capital's refusal to allow the Escrow Holder to release the $1,000,000 Option Payment and $1,500,000 Earnest Money Deposit to H5 is a breach of the Option Agreement and the PSA.

34. As a direct and proximate result of Onni Capital's breach of the Option Agreement and the PSA, H5 has suffered damages in an amount that exceeds $2,500,000, which amount will be proven at trial.

35. Further, pursuant to Sections 6.1 and 11.22 of the PSA, H5 is also entitled to recover its reasonable attorneys' fees, costs, and expenses incurred in connection with this claim.

## SECOND CLAIM FOR RELIEF
### [Breach of Implied Covenant of Good Faith and Fair Dealing]

36. H5 incorporates by reference the allegations contained in paragraphs 1 through 35, above, as if fully set forth herein.

37. Washington law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the State of Washington.

38. Onni Capital breached this implied covenant by purporting to terminate the PSA and obstructing the Escrow Holder's release of funds to H5, despite the fact that none of the circumstances entitling Onni Capital to a refund of the Initial Option Payment, the Additional Option Payment, or its Earnest Money Deposit had occurred at the time Onni Capital purported to terminate the PSA (or has since occurred).

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY JUDGMENT - 10

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

39. Onni Capital's refusal to allow the Escrow Holder to release the funds to H5 violates the implied covenant of good faith and fair dealing contained in the Option Agreement and PSA.

40. As a direct and proximate result of Onni Capital's breach of the implied covenant of good faith and fair dealing, H5 has suffered damages in an amount that exceeds $2,500,000, which amount will be proven at trial.

41. As with the breach of contract claim, H5 is further entitled to recover its reasonable attorneys' fees, costs, and expenses incurred in connection with this claim pursuant to Sections 6.1 and 11.22 of the PSA.

### THIRD CLAIM FOR RELIEF
### [Declaratory Judgment]

42. H5 incorporates by reference the allegations contained in paragraphs 1 through 41, above, as if fully set forth herein.

43. H5 seeks a declaration by this Court regarding the respective rights of H5 and Onni Capital to the funds held in escrow, and specifically which party is entitled to the $1,000,000 Option Payment and the $1,500,000 Earnest Money Deposit.

44. A substantial controversy exists between H5 and Onni Capital as to whether the PSA obligates Onni Capital to authorize the release of the funds in light of its purported termination of the transaction. The legal interests of H5 on this question are adverse to Onni Capital's legal interest.

45. The controversy is of sufficient immediacy and reality to warrant issuance of a judgment declaring that H5 is entitled to receive the full amount held in escrow and that Onni Capital was not entitled to withhold authorization of disbursement to H5.

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF
IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING,
AND DECLARATORY JUDGMENT - 11

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

**PRAYER FOR RELIEF**

WHERFORE, H5 prays for relief as follows:

1. For a declaration that H5 is entitled to the full amount of the $1,000,000 Option Payment, plus all accrued interest, and the $1,500,000 Earnest Money Deposit, plus all accrued interest as the Court may determine;

2. For damages in an amount to be proven at trial;

3. For reasonable attorneys' fees and costs recoverable pursuant to Sections 6.1 and 11.22 of the PSA; and

4. For all such other and further relief as this Court deems necessary, just, or proper.

DATED this 27th day of May, 2020.

HARRIGAN LEYH FARMER & THOMSEN LLP

By   s/Tyler L. Farmer
    Tyler L. Farmer, WSBA #39912
    999 Third Avenue, Suite 4400
    Seattle, WA 98104
    Tel:   (206) 623-1700
    Fax:   (206) 623-8717
    Email: tylerf@harriganleyh.com

*Attorney for H5 Capital - Seattle Real Estate, LLC*

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY JUDGMENT - 12

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

# EXHIBIT A

H5 Capital – Seattle Real Estate, LLC
9320 Wilshire Boulevard, Suite 300
Beverly Hills, CA 90212
Attention: Mr. Josh Simms
Tel.: (310) 275-1395
Email: Josh@h5capital.com

Greenberg Glusker Fields Claman & Machtinger, LLP
1900 Avenue of the Stars
Suite 2100
Los Angeles, CA 90067
Attention: Dennis B. Ellman, Esq.
Tel.: (310) 201-7417
Email: Dellman@greenburgglusker.com

Re: 121 Boren Avenue North, Seattle, Washington 98109; Exercise of Optionee's Option

Ladies and Gentlemen:

This notice is given pursuant to Section 1.4 of that certain Option Agreement to Purchase Real Property (as amended, the "Option Agreement") dated as of August 19, 2019, by and between H5 Capital-Seattle Real Estate, LLC, a Delaware limited liability company ("Optionor"), and Onni Capital LLC, a Nevada limited liability company ("Optionee"). Words defined in the Option Agreement have the same meanings in this notice.

Optionee hereby exercises the Option with respect to the Property and agrees to the terms and conditions to the Purchase Agreement which accompany this Notice.

Dated: December 19, 2019.

Onni Capital LLC,
a Nevada limited liability company

By: _____
Name: KEVIN CARPENTER
Title: SR VP ACQUISITIONS

# EXHIBIT B

Allen Matkins Leck Gamble Mallory & Natsis LLP
Attorneys at Law
865 South Figueroa Street, Suite 2800 | Los Angeles, CA 90017-2543
Telephone: 213.622.5555 | Facsimile: 213.620.8816
www.allenmatkins.com

**David B. Stone**
E-mail: davidstone@allenmatkins.com
Direct Dial: 213 955 5628   File Number: 374211-00158/LA1206575.02

**Via FedEx Overnight and Email**

April 27, 2020

First American Title Insurance Company
777 South Figueroa St., Fourth Floor
Los Angeles, CA 90017
Attention: Jennifer Lewis
Email: jlewis@firstam.com

H5 Capital - Seattle Real Estate, LLC
9320 Wilshire Boulevard, Suite 300|
Beverly Hills, CA 90212
Attn: Mr. Josh Simms
Email: josh@h5capital.com

Greenberg Glusker Fields Claman &
Machtinger, LLP
1900 Avenue of the Stars, Suite 2100
Los Angeles, CA 90067
Attn: Dennis B. Ellman, Esq.
Email: dellman@greenbergglusker.com

> Re: Agreement of Purchase and Sale and Joint Escrow Instructions dated as of December 19, 2019 (as amended, the "Purchase Agreement"), by and between H5 CAPITAL – SEATTLE REAL ESTATE, LLC, a Delaware limited liability company ("Seller") and ONNI CAPITAL LLC, a Nevada limited liability company ("Purchaser"); Escrow No. NCS-975690-LA2;

To All Parties,

  As you know, we represent Purchaser in connection with the above-referenced transaction. Please be advised that Purchaser's performance under the Purchase Agreement on the currently scheduled Closing Date has become impracticable, and the purpose of the Purchase Agreement has become frustrated, as a result of the unforeseeable, unprecedented and material consequences of the COVID-19 pandemic.

  On March 13, 2020, the President of the United States declared the ongoing COVID-19 pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, tribes, territories, and the District of Columbia pursuant to section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121-5207.

Allen Matkins Leck Gamble Mallory & Natsis LLP
Attorneys at Law
Page 2

On March 23, 2020, Jay Inslee, Governor of the state of Washington, issued a proclamation prohibiting all non-essential activities in the state (the "**Stay Home, Stay Healthy Order**"). On April 2, 2020, Governor Inslee extended the Stay Home, Stay Healthy Order because, among other reasons, "the worldwide COVID-19 pandemic and its progression in Washington State continues to threaten the life and health of our people as well as the economy of Washington State, and remains a public disaster affecting life, health, property or the public peace."

The global COVID-19 pandemic has wreaked havoc on virtually every corner of the United States economy. The wide-ranging detrimental effects of the COVID-19 pandemic on the public health and the economy were unanticipated by virtually everyone in America, including Purchaser, and its full impact remains unknown even today. The transaction at issue here was not immune.

Accordingly, this notice shall constitute Purchaser's notice to Seller and Escrow Holder that Purchaser has elected to terminate the Purchase Agreement and all documents related thereto as a result of the matters described herein. Escrow Holder is hereby instructed to, promptly upon receipt of this notice, disburse the entire amount of the Option Payment and the Deposit to Purchaser. To the extent you receive any instructions from Seller requesting the disbursement of the Option Payment and/or the Deposit to Seller, please be advised that Purchaser does **not** consent to the release of the funds, and Purchaser hereby demands that you withhold release of the funds until instructed otherwise by Purchaser.

Very truly yours,

David B. Stone

cc: Mr. Kevin Carpenter
Mr. Alistair Arnold
Mr. Brian Serikaku
Ryan T. Waggoner, Esq.
Maxwell B. Shapiro, Esq.

# EXHIBIT C

LAW OFFICES

**HARRIGAN LEYH FARMER & THOMSEN LLP**

999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON  98104
(206) 623-1700

TYLER L. FARMER                                                                                                          E-MAIL:  TYLERF@HARRIGANLEYH.COM
                                                                                                                                    FACSIMILE:  (206) 623-8717

May 7, 2020

*Via Email and Overnight Federal Express*

Kevin Carpenter  c/o
David Stone
Allen Matkins Leck Gamble Mallory &
Natsis LLP
865 South Figueroa Street, Suite 2800
Los Angeles, CA 90017
davidstone@allenmatkins.com

     Re:    15 Day Notice of Default by Onni Capital LLC
               Agreement of Purchase and Sale and Joint Escrow Instructions (Dec. 19, 2019)

Dear Mr. Carpenter:

     H5 Capital – Seattle Real Estate, LLC (H5 Capital) hereby provides notice to Onni Capital LLC (Onni) that Onni is in default of the above-referenced agreement (Agreement).  Onni has 15 days from the date of this Notice to cure its default, as provided in Sections 2.3 and 6.1 of the Agreement.

     The Agreement required Onni to perform certain obligations on or before the transaction's April 30, 2020 closing date.  Onni has failed to perform those obligations and instead purported to notify H5 Capital and American Title Insurance Company (First American) on April 27, 2020 that it had elected to terminate the Agreement and "all documents related thereto" due to the global COVID-19 pandemic.  Letter from D. Stone to J. Lewis, et al. (Apr. 27, 2020).  The Agreement, however, provides Onni a right of termination only in expressly limited circumstances, none of which include the reasons cited by Onni.  *See* Agreement, ¶¶ 4.7, 6.2, 7.1.  Consequently, Onni's notice of termination is invalid, and Onni is in violation of its obligations to H5 Capital.

     Despite our April 27 correspondence, Onni is in default of the Agreement as it failed to consummate the transaction.  *See* Agreement, ¶¶ 4.1, 4.3.  H5 Capital therefore demands that, no later than May 22, 2020, Onni either (1) take all necessary steps to cure its default and consummate the transaction, Agreement, ¶ 4.3, or (2) authorize First American to disburse to H5 Capital the $1,500,000 deposit (plus accrued interest) as liquidated damages for Onni's breach of the agreement, Agreement, ¶ 6.1, and further authorize First American to disburse the non-refundable option payment of $1,000,000 (plus accrued interest) to H5 Capital, Agreement, ¶ 2.3; RCW 64.04.220.  In the event Onni fails to do so, H5 Capital will institute legal action against Onni to recover these amounts, as well as costs and expenses.

                                                       Very truly yours,

                                                           HARRIGAN LEYH FARMER & THOMSEN LLP

                                                           Tyler L. Farmer